UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
|                         ) | |
|       Plaintiff-Respondent,      ) | |
|                         ) | |
| v.                              ) | Case No. 2:16-cr-20031-SLD-EIL-1 |
|                         ) | |
| DARRYL S. COLEMAN,[1]      ) | |
|                         ) | |
|       Defendant-Petitioner.      ) | |

ORDER

Before the Court are Defendant-Petitioner Darryl S. Coleman's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 31, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 33, and counseled motion for a status conference, ECF No. 39. For the reasons that follow, the 2255 motions are DENIED, and the remaining motion is MOOT.

**BACKGROUND**

In May 2016, a grand jury indicted Coleman on three counts of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). Indictment 1–3, ECF No. 1. The alleged bank robberies and attempted bank robbery occurred in the Central District of Illinois between October and December 2015. *Id.* Coleman was arrested in connection with this case on August 1, 2016. *See* Arrest Warrant 1, ECF No. 24. Assistant Federal Public Defender Elisabeth Pollock was appointed to represent him. *See* Aug.

---

[1] Coleman spells his name Darryll on his *pro se* motion, *see* ECF No. 31, and that appears as an alias on his presentence investigation report, *see* Presentence Investigation Report 2, ECF No. 17. The docket, however, lists his name as Darryl. For purposes of this Order, the Court follows the docket.

1

5, 2016 Min. Entry.  On September 27, 2016, Coleman entered a plea of guilty to all the charges

against him without a plea agreement.  Sept. 27, 2016 Min. Entry.  His plea was accepted by

United States District Judge Colin Bruce, who was then presiding over the case, on October 20,

2016.  Order Approving Magistrate Judge Recommendation, ECF No. 15.

      Prior to pleading guilty in the instant case, Coleman was convicted of and sentenced to 63

months of imprisonment for two bank robberies committed in the Northern District of Indiana in

November 2015.  *See* Judgment 1–2, *United States v. Coleman*, No. 2:15-cr-00150-JTM-PRC

(N.D. Ind. June 17, 2016) (Doc. 28); Indictment 1–2, *United States v. Coleman*, No. 2:15-cr-

00150-JTM-PRC (N.D. Ind. Dec. 17, 2015).

      The United States Probation Office ("USPO") prepared a presentence investigation report

("PSR") in advance of sentencing in the instant case.  PSR, ECF No. 17.  USPO indicated that

Coleman's combined offense level was 29, *id.* ¶ 59, and that after acceptance of responsibility,

his total offense level was 26, *id.* ¶¶ 61–63.  The Northern District of Indiana robberies did not

figure into the offense level.  *See id.* ¶¶ 28–65.  With a criminal history category of IV, *id.* ¶ 70,

Coleman's Sentencing Guidelines range for imprisonment was 92 to 115 months, *id.* ¶ 102.  He

was subject to a maximum term of supervised release of three years on each count.  *Id.* ¶ 105.

Coleman objected to assessment of criminal history points for the Northern District of Indiana

conviction, arguing that it "was based on conduct that was relevant conduct related to the instant

offense."  *Id.* at 23–25.  Judge Bruce overruled Coleman's objection, Statement of Reasons 6–8,

ECF No. 21, and sentenced him to 115 months of imprisonment, with 22 of the 115 months to be

served consecutively to the sentence imposed in the Northern District of Indiana case, Jan. 9,

2017 Min. Entry.

2

Coleman appealed, Not. Appeal, ECF No. 26, but later voluntarily dismissed the appeal, *see* Mandate 1, ECF No. 30 (noting that the appeal was dismissed pursuant to Federal Rule of Appellate Procedure 42(b) and Seventh Circuit Rule 51(f), which provide for voluntary dismissal by a criminal defendant).

In March 2020, Coleman filed the Pro Se 2255 Motion.  *See* Pro Se 2255 Mot. 12 (declaring that the motion was placed in the prison mailing system on March 29, 2020). [2]  He argues that Judge Bruce was required to recuse himself due to an appearance of partiality.  *Id.* at 4–5.  This claim is based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018. *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).  Coleman also argues that the sentence imposed in this case violated the Double Jeopardy Clause because he was already punished for the conduct in this case in the Northern District of Indiana case.  *Id.* at 6.

Judge Bruce recused himself from hearing Coleman's motion and the matter was reassigned to this Court.  Apr. 7, 2020 Text Order of Recusal.  The Court appointed counsel to represent Coleman with respect to the Pro Se 2255 Motion.  *See* Apr. 7, 2020 Text Order.  On September 24, 2020, Counsel filed the Counseled 2255 Motion "which is intended to supplement" the Pro Se 2255 Motion.  Counseled 2255 Mot. 1.  The Counseled 2255 Motion raises the following claims: that Coleman's "due process rights were violated because Judge Bruce was actually bias[ed] against him," that, alternatively, "Judge Bruce's conduct created the appearance of bias" requiring recusal under 28 U.S.C. § 455(a), and that the Federal Public

---

[2] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

Defender's office ("FPD") was ineffective in violation of the Sixth Amendment.  *Id.* at 12, 23–24.

The Government filed its response on July 13, 2021.  Resp., ECF No. 37.  It argues that Coleman "cannot show actual bias or ineffective assistance of counsel" and that his § 455(a) claim is untimely[3] and not cognizable on § 2255 review.  *Id.* at 1.  It did not address Coleman's double jeopardy claim.

No reply was filed, though Coleman later filed a motion for a status conference.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### II.    Analysis

The Court addresses each of Coleman's claims separately along with any defenses specific to those claims.

---

[3] The Government concedes that the due process claim is timely because it was covered by a tolling agreement. Resp. 7 n.3.  It does not address the timeliness of the ineffective assistance or double jeopardy claims.

**A. Due Process Claim**

The due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, over a year after Coleman was sentenced.  These communications have been detailed and summarized elsewhere.  *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Coleman argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights.  *See* Counseled 2255 Mot. 12.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications

impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  Coleman relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case.  *See* Counseled 2255 Mot. 4–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority).  Coleman points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him.  Instead, he is relying on the *ex parte* communications alone.  *See* Counseled 2255 Mot. 14–15.  The Court thus finds that Coleman has failed to show either actual bias or a risk of bias so high that it violates due process.  The due process claim is denied.

6

### B.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Coleman argues in the alternative to his due process claim that the *ex parte* communications demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a).  *See* Counseled 2255 Mot. 12.  The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Coleman's case under § 455(a).[4]  Instead, it argues that this statutory claim is untimely and not cognizable on § 2255 review.  Resp. 6–15.

#### 1.  Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

---

[4] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far.  *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

Coleman acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case.  Counseled 2255 Mot. 2–3.[5]  The Government responds that Coleman is not entitled to equitable tolling because the attorney misconduct he alleges is not extraordinary and because he did not take "any actions to diligently pursue his rights."  Resp. 8–10.

The time limits set forth in § 2255(f) are subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255).  A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649 (quotation marks omitted).  "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  *United States v. Marcello*, 212 F.3d 1005, 1010

---

[5] The Court cannot ascertain whether Coleman contends his motion is timely under § 2255(f)(2), (3), or (4).  He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4).  Counseled 2255 Mot. 2.  But he makes no argument that any of these provisions apply.  Instead, he goes on to argue for equitable tolling, *id.* at 2–3, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)).  In any case, the Court finds that Coleman's motion is not timely under § 2255(f)(2), (3), or (4).  Because Coleman does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply.  And because Coleman does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply.  The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Coleman could have learned of Judge Bruce's improper communications.  Resp. 8.  The Court agrees, though it declines to find on the record before it that Coleman should have been aware of the communications in August 2018, as the Government argues, *see id.*  The Government provided a letter from Federal Public Defender Thomas Patton to Coleman dated November 26, 2018 informing him of Judge Bruce's communications.  *See* Nov. 26, 2018 Letter, Resp. Ex. A, ECF No. 37-1 at 3–4.  At the latest, Coleman would have been aware of the communications in late 2018 when he received this letter, but he did not file his Pro Se 2255 Motion until March 2020, more than a year later.

(7th Cir. 2000).  "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling."  *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Coleman barely develops an argument that he has met both elements of the *Holland* test.  He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse.  *See* Counseled 2255 Mot. 2–3 (quotation marks omitted).  He does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case.  In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters."  *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief."  *Id.* at 653–54.  Coleman points to no facts—and cites no further cases—to support his argument that Patton's legal mistake would go

beyond mere negligence and support a finding of extraordinary circumstances warranting

equitable tolling.  *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect

legal advice generally does not by itself trigger equitable tolling.").  Moreover, Coleman merely

states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the

mistake."  Counseled 2255 Mot. 3.  But "mere conclusory allegations of diligence are

insufficient."  *Mayberry*, 904 F.3d at 531.

The Court concludes that Coleman has failed to establish his entitlement to equitable

tolling, so it finds his § 455(a) claim untimely.

### 2.  Cognizability

Even if Coleman's § 455(a) claim were not untimely, it would not warrant relief.  Section

2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas

corpus."  *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255

suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of

the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised

on a § 2255 motion."  *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed

error of law was a fundamental defect which inherently results in a complete miscarriage of

justice, and whether it presents exceptional circumstances where the need for the remedy

afforded by the writ of habeas corpus is apparent."  *Id.* (quotation marks and alterations omitted);

*see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (describing the standard as whether the federal

law violation qualifies as "a fundamental defect which inherently results in a complete

miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[6]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[7]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice."  *Id.* (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255."  *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency."  *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap.  *Id.* at 82, 83.[8]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality."  It made this

---

[6] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[7] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available."  *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[8] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]."  *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here,

the alleged error does not rise to that level. As noted above, Coleman has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Coleman's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, Coleman was sentenced within his Guidelines range.

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a

showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Coleman has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice.  His § 455(a) claim, therefore, does not warrant relief under § 2255.

### C. Ineffective Assistance of Counsel Claims

Coleman asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways.  *See* Counseled 2255 Mot. 23–24.  First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 24.  And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims.  *Id.*

14

With respect to the appeal claim, the Government points out that "Coleman's appellate rights were long extinguished by the time 'the full scope' of Judge Bruce's e-mails were revealed."  Resp. 24.  The Court finds this persuasive—Coleman's appeal was dismissed in 2017, at least a year before Judge Bruce's *ex parte* communications came to light.  Coleman's counsel could not have performed deficiently by failing to raise an argument based on facts of which she was unaware.

The Government makes a number of arguments against the tolling agreement claim, *id.* at 24–28, but the Court has identified a more fundamental problem with it.  Coleman had no right to counsel beyond his direct appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Thus, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### D.  Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides:  "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The clause prevents "both successive punishment and successive prosecution" for the same offense.  *Witte v. United States*, 515 U.S. 389, 396 (1995) (quotation marks omitted).  Coleman argues that his sentence in this case violates the Double Jeopardy Clause because he was already punished for the conduct at issue in this case in the Northern District of Indiana case.  Pro Se 2255 Mot. 6.  Specifically, he alleges that the Northern District of Indiana judge "factually found and determined that [he] committed the Bank Robberies in the Central District of Illinois" and

15

"used those robberies to determine and impose the sentence of imprisonment as punishment for the crime spree in its totality." *Id.*

The Government does not address this claim. Nevertheless, the Court finds it meritless for two reasons. First, Coleman fails to provide any evidence to support his contention that the Northern District of Indiana judge based the sentence in that case on the robberies charged in this case. Nothing on the publicly available docket for that case indicates what the judge relied on in determining the sentence and Coleman provided no documentation to support his assertion.

Second, even if the judge did consider the Illinois robberies in determining the sentence in the Northern District of Indiana case, Coleman's subsequent prosecution and punishment in this case for those robberies did not violate the Double Jeopardy Clause. The Supreme Court has specifically "rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime." *Witte*, 515 U.S. at 398. "[A] defendant . . . is punished, for double jeopardy purposes, only for the offense of which [he] is convicted." *Id.* at 397. Thus, "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." *Id.* at 399. Accordingly, even if the Illinois robberies were considered relevant conduct in the Northern District of Indiana case, the sentence in the Northern District of Indiana case did not constitute punishment for those robberies, and the sentence imposed in this case was not a second punishment for those robberies. The double jeopardy claim is denied.

### III.     Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Coleman has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Darryl S. Coleman's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 31, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 33, are DENIED.  The counseled motion for a status conference, ECF No. 39, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-02085-SLD.

Entered this 29th day of September 2023.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
